NOT DESIGNATED FOR PUBLICATION

No. 114,754

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEREME L. NELSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed January 27, 2017. Affirmed.

*Philip White*, of Ariagno, Kerns, Mank & White, LLC, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY and BUSER, JJ.

*Per Curiam*: Jereme L. Nelson appeals his conviction for distribution of methamphetamine after the police found illegal drugs in his truck. Nelson claims the district court erred in denying his motion to suppress the evidence obtained during the search of his truck. We find no error in the district court's ruling and affirm.

The Wichita police had been watching Nelson for about 2 months after receiving reports that he was involved in drug dealing. The officers saw cars registered to persons known to be involved in illegal drugs make short stops at Nelson's house on a number of occasions. On one such occasion, Nelson left his house to meet with a person at an

1

apartment complex, got into another vehicle for less than a minute and appeared to exchange something with the other person, and then got back into his vehicle and drove back to his house.

On the day of Nelson's arrest, Sergeant Ben Blick and Detective Jon Gill saw Nelson leave his home and get into his truck. The officers knew that Nelson's driver's license was suspended. They followed Nelson to a restaurant where Sergeant Conrad Jansson joined them.

Nelson went into the restaurant for a short time but then returned to his truck where he opened the passenger side door for a minute. He then walked to a nearby black Volkswagen with darkened windows and attempted to open the driver's side door, but the Volkswagen apparently was locked. At that point Nelson looked back towards the restaurant as he walked around to the passenger side of the Volkswagen. The tail lights on the Volkswagen then flashed as if someone watching Nelson had unlocked the vehicle with a remote key. Nelson opened the Volkswagen's passenger side door and entered, remaining inside for 30 to 60 seconds. No one else was inside the vehicle with Nelson, but someone sitting inside the restaurant would have an unobstructed view of the Volkswagen through the window. Nelson then got out of the Volkswagen, stood outside the vehicle and peered inside, and then closed the door. He returned to his truck and drove away. Blick and Gill followed Nelson in separate vehicles as Nelson drove home.

Jansson remained in the restaurant parking lot. A few minutes after Nelson left, Jansson saw a Hispanic man come out of the restaurant, get into the passenger seat of the Volkswagen, sit for a couple of minutes, and then walk back into the restaurant carrying a large amount of cash in his hand. A few minutes later, Jansson saw the same man and another man come out of the restaurant together. The men were not acting normally; they were looking around, as if they were looking for something out of place or for someone

who might be watching them. One man knelt down by the license plate before both men got into the Volkswagen and drove away.

Blick and Gill decided to stop Nelson when he returned home and arrest him for driving with a suspended driver's license. They knew from prior experience with Nelson that when stopped by the police, he may attempt to flee. Thus, they decided to stop him at home to minimize the risk of a car chase.

Nelson backed his truck into the driveway at home. Gill pulled in front of the truck. Nelson then turned his tires to the left, causing the officers to believe he was attempting to go around Gill's vehicle and flee. In response, Blick moved his vehicle so as to block Nelson from fleeing.

The officers identified themselves as police officers, ordered Nelson to get out of the truck, and told him that he was under arrest. Nelson did not immediately comply, but was seen frantically moving around in the truck for 5 to 10 seconds as if trying to put something under or retrieve something from under the seat.

The officers drew their weapons because they were unsure whether Nelson was trying to retrieve a firearm. As Nelson got out of the truck, he locked the doors, tossed the keys inside the truck, and closed the door. The officers immediately arrested Nelson, put him in a patrol car, and transported him away.

They then contacted the sheriff's department and summoned a canine unit for a drug sniff. When the canine unit arrived, the dog, trained to react to methamphetamine, promptly alerted on the truck. Gill obtained assistance to unlock the truck. The search that followed yielded two packages of methamphetamine along with $493 in cash, a receipt for a $2,000 or $2,500 bank deposit, and a cell phone.

3

The State charged Nelson with distribution of methamphetamine and possession of methamphetamine. Nelson moved to suppress the evidence found in his truck. After an evidentiary hearing, the district court denied the motion. The case was then tried to the court on stipulated facts. Nelson was convicted of distribution of methamphetamine and sentenced to 72 months' imprisonment but granted probation. This appeal followed.

On appeal, Nelson claims the district court erred in denying his motion to suppress because the truck search violated § 15 of the Kansas Constitution Bill of Rights and the Fourth Amendment to the United States Constitution. We typically consider this type of claim using a bifurcated review standard. First, we review the factual underpinnings for the district court's decision for substantial competent evidence. Then we review de novo the district court's ultimate legal conclusion drawn from those facts. But here, because the facts apparently are undisputed, we concern ourselves only with whether the facts require that the evidence be suppressed. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014). The State bears the burden to prove the lawfulness of the search and the seizure of evidence. *State v. Overman*, 301 Kan. 704, 710, 348 P.3d 516 (2015).

Nelson does not contend that the stop and his subsequent arrest for driving with a suspended license was unreasonable or that the officers exceeded the scope and purpose of the arrest. Rather, he argues that the officers did not have probable cause to believe that evidence of a drug-related crime would be found in the truck. He also argues that the officers did not have the authority to conduct a warrantless drug-sniff search of his truck. He contends, in the alternative, that the automobile exception to the requirement of a search warrant does not apply when a vehicle is parked at the owner's home because no exigent circumstances exist in that situation.

The Fourth Amendment to the United States Constitution protects against unreasonable governmental searches and seizures. Here, the State relies on the automobile exception to the requirement of a search warrant. This exception arises when

there is probable cause plus exigent circumstances which threaten the loss of evidence of a crime because of the mobility of the vehicle. *Stevenson*, 299 Kan. at 58; see *State v. Sanchez-Loredo*, 294 Kan. 50, 58, 272 P.3d 34 (2012) (mobility of vehicle fulfills the requirement of exigent circumstances; therefore, a warrantless search of a vehicle is permitted based solely on probable cause).

Probable cause to conduct a search was defined as follows in *State v. Fitzgerald*, 286 Kan. 1124, 1128, 192 P.3d 171 (2008), *abrogated on other grounds by Sanchez-Loredo*, 294 Kan. 50:

> "Probable cause is the reasonable belief that a specific crime has been committed and that a specific person committed it. Probable cause exists when the facts and the circumstances within a law enforcement officer's knowledge and about which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed. When determining whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt. *State v. Abbott*, 277 Kan. 161, Syl. ¶¶ 2, 3, 83 P.3d 794 (2004). Evidence of probable cause need not reach the level necessary to prove guilt beyond a reasonable doubt, but it must constitute more than mere suspicion. [Citation omitted.]"

A review of the undisputed facts surrounding this search as detailed above establishes that Nelson's suspicious activities just prior to his arrest provided the probable cause necessary to search the vehicle. The police had information about Nelson's involvement in the drug trade, and they observed his suspicious activities during the 2 months prior to his arrest. On the day of his arrest, his conduct at the restaurant was consistent with the distribution of illegal drugs. When he reached home, acting as if he might flee, failing to comply immediately with the officers' commands, making furtive

movements in his truck, and locking the keys in the truck all support a conclusion of probable cause to search the truck even before arrival of the drug dog.

The drug dog sniffing the exterior of the truck did not in itself constitute a search for Fourth Amendment purposes. *State v. Barker*, 252 Kan. 949, 957-58, 850 P.2d 885 (1993); see *United States v. Place*, 462 U.S. 696, 707, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). But the dog's alerting on the truck to the presence of drugs inside confirmed the existence of probable cause to search the truck. *State v. Brewer*, 49 Kan. App. 2d 102, 113, 305 P.3d 676 (2013), *rev. denied* 298 Kan. 1204 (2014); see *Florida v. Harris*, 568 U.S. ___, 133 S. Ct. 1050, 1057, 185 L. Ed. 2d 61 (2013); *State v. Anderson*, 281 Kan. 896, 907-08, 136 P.3d 406 (2006).

As an alternative argument, Nelson claims that the automobile exception does not apply to an automobile parked at a residence. Nelson's reliance on *Florida v. Jardines*, 569 U.S. ___, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013), to support this proposition is unfounded. *Jardines* involved a drug dog sniffing and alerting to the front door of a residence, not a readily mobile vehicle. In our present case, the officers did not enter the curtilage of a residence with the intent of investigating the home and its immediate surroundings. Nelson was arrested immediately upon parking in his driveway.

Nelson also relies on dicta found in *United States v. Fields*, 456 F.3d 519, 524-25 (5th Cir. 2006), and *State v. Hobbs*, 933 N.E.2d 1281, 1285-86 (Ind. 2010). In fact, the courts in those cases upheld the challenged searches as constitutional. Nelson provides no plausible explanation why evidence of a crime located in a vehicle is less likely to be lost if the vehicle is parked at home rather than at some other location. An operable vehicle is considered readily mobile, and a readily mobile vehicle provides the exigent circumstances justifying a warrantless search. *Sanchez-Laredo*, 294 Kan. 50, Syl. ¶ 4; see *California v. Carney*, 471 U.S. 386, 392-93, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1984). A holding contrary to Nelson's alternative argument is found in *United States v. Brookins*,

345 F.3d 231, 237-38 (4th Cir. 2003), wherein the court held that the search of a vehicle on private property based on probable cause alone was sufficient to legitimize the search. Here, exigent circumstances justified the warrantless search of Nelson's truck. The district court did not err in denying Nelson's suppression motion.

Affirmed.