NOT DESIGNATED FOR PUBLICATION

No. 117,611

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BOBBY D. HOMEIER,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Russell District Court; RON SVATY, judge. Opinion filed May 4, 2018. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before MALONE, P.J., BUSER and GARDNER, JJ.

PER CURIAM: Bobby D. Homeier appeals his driver's license suspension. Homeier contends he was illegally arrested without probable cause for driving under the influence of alcohol (DUI). As a result, Homeier argues that the law enforcement officer who improperly arrested him had no legal authority to request an evidentiary alcohol breath test, which he refused, and the Kansas Department of Revenue (KDR) improperly suspended his driver's license. Finding no error, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of December 27, 2015, Officer Jordan Harrison observed Homeier commit two speeding violations. In particular, the officer noted that Homeier was speeding 44 miles per hour in a 35 mile per hour zone, and 53 miles per hour in a 45 mile per hour zone. Upon activating his emergency equipment, Officer Harrison noticed that it "took [Homeier] a little bit longer" to pull over to the side of the road.

Upon contacting Homeier, Officer Harrison smelled alcohol coming from Homeier's vehicle and his person. Homeier also slurred his speech. The officer noticed that Homeier's eyes were glassy and bloodshot. When the officer asked Homeier to exit his vehicle, he observed that Homeier had difficulty with this request and exhibited poor balance. Additionally, Officer Harrison testified that he considered the speeding violations to be another indicator of alcohol impairment. Officer Harrison asked Homeier how long it had been since he had consumed alcohol and Homeier responded, "[A]while." The officer asked Homeier to submit to a preliminary breath test and Homeier agreed. Another officer administered the test but the results were not considered below, and they are not in the record.

Due to the extremely cold temperatures and strong winds, Officer Harrison asked Homeier if he would accompany him to the sheriff's office to perform field sobriety testing. Homeier agreed to the officer's request. According to Officer Harrison, Homeier was not under arrest at this time but he was taken to the sheriff's office with the driver's consent. At the sheriff's office, Homeier exhibited two signs of impairment on the walk-and-turn test, and no signs of impairment on the one-leg stand test. Homeier refused to submit to an evidentiary alcohol breath test.

The KDR suspended Homeier's license for his refusal to submit to the evidentiary alcohol breath test. Homeier appealed the agency's action, and it was affirmed by the KDR. He then filed a petition for judicial review with the district court. After an evidentiary hearing, the district court denied the petition, ruling that Officer Harrison had reasonable grounds to request that Homeier submit to testing. Homeier appeals.

ANALYSIS

On appeal, Homeier argues that he was unlawfully arrested when Officer Harrison transported him to the sheriff's office to conduct a DUI investigation without having probable cause to arrest him for the crime. According to Homeier, because his detention or arrest was unlawful, the KDR's administrative order suspending his driving privileges should be dismissed. In response, the KDR asserts that Officer Harrison had reasonable grounds to believe that Homeier was DUI at the time the officer requested that he submit to the evidentiary alcohol breath test.

The Kansas Judicial Review Act (KJRA) defines the scope of judicial review of state agency actions. K.S.A. 2017 Supp. 77-603(a); see *Ryser v. Kansas Bd. of Healing Arts*, 295 Kan. 452, 458, 284 P.3d 337 (2012). Appeals from administrative suspensions of driver's licenses are subject to review under the KJRA except that appeals to the district court are de novo. K.S.A. 2017 Supp. 8-259(a); see *Moser v. Kansas Dept. of Revenue*, 289 Kan. 513, 517, 213 P.3d 1061 (2009) On appeal, the burden of proving the invalidity of the agency action rests on the party asserting such invalidity. K.S.A. 2017 Supp. 77-621(a)(1). In short, in this appeal the burden is on Homeier to prove the invalidity of the KDR's suspension order because his DUI arrest was illegal.

Our standard of review in driver's license suspension cases is twofold. The district court's factual determinations are reviewed for substantial competent evidence. Where there is no factual dispute, this court conducts de novo review. *Swank v. Kansas Dept. of*

3

*Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Homeier acknowledges: "In appellant's case, the facts and circumstances leading up to the transport of [Homeier] are not in dispute." We agree. This appeal presents only a question of law for which our review is unlimited.

Under Kansas law, any person who operates a vehicle within the state is deemed to have given consent to submit to a test to determine the presence of alcohol or drugs. K.S.A. 2017 Supp. 8-1001(a). Law enforcement officers may conduct these tests if certain statutory conditions are present. The statute provides:

> "(b) A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a): (1) If, at the time of the request, the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both . . . and one of the following conditions exists: (A) The person has been *arrested or otherwise taken into custody* for any violation of any state statute, county resolution or city ordinance." (Emphasis added.) K.S.A. 2017 Supp. 8-1001(b).

A person who refuses to submit to a test requested pursuant to K.S.A. 2017 Supp. 8-1001(b) will have his or her driving privileges suspended. K.S.A. 2017 Supp. 8-1014.

Of particular importance to this appeal is the italicized statutory language emphasized above. The arrest required by K.S.A. 2017 Supp. 8-1001(b) "must be a lawful one in order to authorize the arresting officer to request the breath test." *Shrader v. Kansas Dept. of Revenue*, 296 Kan. 3, 7, 290 P.3d 549 (2012). "To be lawful, a warrantless arrest must be supported by probable cause." *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012). Our Supreme Court has defined probable cause:

"Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004). Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest. *Bruch* [*v. Kansas Dept. of Revenue*], 282 Kan. [764, 775-76, 148 P.3d 538 (2006)]. Probable cause is determined by evaluating the totality of the circumstances. *State v. Hill*, 281 Kan. 136, 146, 130 P.3d 1 (2006). As in other totality of the circumstance tests, there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other. *State v. McGinnis*, 290 Kan. 547, 552-53, 233 P.3d 246 (2010); see *Smith* [*v. Kansas Dept. of Revenue*], 291 Kan. [510, 515, 242 P.3d 1179 (2010)]." *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 656-57, 256 P.3d 845 (2011).

Preliminarily, Homeier argues that he was unlawfully arrested without probable cause when Officer Harrison transported him from the scene of the traffic stop to the sheriff's office. KDR counters that Officer Harrison testified that he did not intend to arrest Homeier when he asked him to accompany him to the sheriff's office. KDR argues, "There was no testimony that would indicate to the trial court or any other Court that the circumstances would make any reasonable person believe he or she was under arrest."

On a related note, Homeier also emphasizes:

"What is clear is the officer did not intend to arrest [Homeier] at the time of the transport because he had not yet conducted his DUI investigation. This fact is not disputed and plainly indicates that the officer himself did not believe probable cause existed at that point in time."

Contrary to this assertion, there is no evidence that Officer Harrison believed that he did not have sufficient grounds to arrest Homeier for DUI at the traffic stop prior to transporting him to the sheriff's office. Moreover, there is no basis for an inference that because Officer Harrison wanted to conduct routine field sobriety tests, that he had not

5

already obtained sufficient evidence to conclude there was probable cause to believe that Homeier had committed a DUI. We know of no Kansas law that requires an officer to immediately interrupt an investigation and arrest a defendant once the probable cause threshold is met.

Finally, Kansas law is clear that courts shall evaluate whether probable cause to arrest exists not based on the officer's subjective belief but based on a reasonable officer's objective belief. To determine whether probable cause exists, the court "looks to the totality of the circumstances, as viewed through the lens of an objectively reasonable police officer." *State v. Keenan*, 304 Kan. 986, 994, 377 P.3d 439 (2016). "'Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'" *State v. Thompson*, 284 Kan. 763, 805, 166 P.3d 1015 (2007) (quoting *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 [1996]); see also *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004) (stating that "an arresting officer's state of mind [except for the facts that he knows] is irrelevant to the existence of probable cause").

We conclude, however, that it is unnecessary to determine whether Homeier's arrest occurred at the scene of the traffic stop when Officer Harrison asked him to go to the sheriff's office or later at the sheriff's office after the administration of the field sobriety testing. For purposes of this appeal we will analyze the probable cause question as presented by Homeier, assuming—without deciding—that Homeier was under arrest at the scene of the traffic stop when Officer Harrison asked him to accompany him to the sheriff's office.

The question then arises: Did Officer Harrison have probable cause to arrest Homeier for DUI at the scene of the traffic stop prior to going to the sheriff's office?

6

Homeier cites two criminal cases, *City of Norton v. Wonderly*, 38 Kan. App. 2d 797, 172 P.3d 1205 (2007), and *City of Norton v. Schoenthaler*, No. 97,036, 2007 WL 2410122 (Kan. App.) (unpublished opinion), to bolster his claim that Officer Harrison did not have probable cause to arrest him for DUI. We find both cases distinguishable and not supportive of Homeier's legal position.

In *Wonderly*, the licensee challenged whether the police had probable cause to arrest him. Our court noted that "prior to Wonderly's arrest, the admissible evidence showed that Wonderly initially disobeyed an order to get back into his truck, he had bloodshot eyes, the smell of alcohol was on his breath, and he admitted to drinking earlier that evening." 38 Kan. App. 2d at 808. On the other hand, our court noted that Officer Morel did not observe Wonderly commit any traffic infractions or have difficulty retrieving his driver's license, getting out of his truck, or slurring his speech. The court concluded that "the limited evidence Morel had gathered at the scene of the traffic stop was insufficient to support probable cause for an arrest." 38 Kan. App. 2d at 808-09.

Unlike *Wonderly,* Officer Harrison had more evidence of Homeier's alcohol intoxication and driving impairment at the time of arrest. Officer Harrison observed two speeding violations. Homeier took "a little bit longer" than usual to respond to the officer's flashing lights. The officer also observed Homeier slurring his speech and having difficulty getting out of his car. Quite simply, *Wonderly* does not support Homeier's claim of insufficient probable cause to arrest.

In *Schoenthaler*, a panel of our court summarized the evidence of alcohol impairment:

"Prior to Schoenthaler's arrest, the admissible evidence shows that he was speeding around midnight; he smelled of alcohol; he placed an item behind his seat while

7

the officers approached the vehicle; he had open beer cans in his vehicle; and Schoenthaler made an admission to drinking 30 minutes before driving his vehicle.

"However, the evidence also indicates that Schoenthaler did not slur his speech, possess poor balance, or display other signs of intoxication, such as bloodshot or glazed eyes. Moreover, except for Schoenthaler's speeding in a construction zone, there were no other indications of impairment in Schoenthaler's driving." *Schoenthaler*, 2007 WL 2410122, at *5.

Of note, in suppressing the DUI evidence, our panel concluded that "the facts surrounding this issue present a close question as to whether the officers had probable cause to arrest Schoenthaler for committing a DUI." *Schoenthaler*, 2007 WL 2410122, at *5. However, as is readily apparent, the very indicators of alcohol consumption and driving impairment that our panel found lacking in *Schoenthaler*—slurred speech, poor balance, and bloodshot eyes—were all evident in Homeier's case. Applying *Schoenthaler* to the facts of this case does not support Homeier's contention that Officer Harrison lacked probable cause to arrest him at the scene of the traffic stop.

Similarly, in *Sloop*, a police officer followed Sloop's vehicle for eight to ten blocks without noticing any traffic infractions. Sloop was stopped because his tag light was not illuminated. Sloop and his passenger smelled of alcohol, and Sloop's eyes were watery and bloodshot. Sloop said he had consumed "'like one beer at a friend's house.'" 296 Kan. at 14-15. Sloop handed over his driver's license without fumbling. His speech was impaired but not slurred, and he had no trouble exiting the car. The officer placed Sloop under arrest for DUI. Sloop refused to take a breath test, and his driver's license was suspended.

Our Supreme Court held that Sloop's arrest was not supported by probable cause, and, as a result, his arrest was illegal. 296 Kan. at 16. In arriving at this conclusion, our Supreme Court noted that at the time of the traffic stop, Sloop was not violating any traffic laws which could suggest possible impairment. Moreover, Sloop's "speech was not

slurred, he did not fumble while producing his license, and he did not stumble when exiting his vehicle and was steady when walking to the rear." 296 Kan. at 23.

Once again, what distinguishes *Sloop* from the case on appeal is that in *Sloop* there were few indicators of driving impairment due to alcohol consumption. Unlike *Sloop*, Homeier was speeding, took a longer than usual time to respond to the flashing lights of Officer Harrison's patrol car, had slurred speech, and poor balance. While the *Sloop* court found that the absence of slurred speech and poor balance tipped the totality of the circumstances towards finding that there was no probable cause to arrest, in the present case, the presence of these indicators support the district court's finding that Officer Harrison had probable cause to arrest Homeier for DUI.

In conclusion, because we hold that Homeier's arrest was supported by probable cause, there was no error in the KDR's suspension of his driving privileges pursuant to K.S.A. 2017 Supp. 8-1001. Moreover, the district court did not err in its legal conclusion affirming the suspension order.

Affirmed.